MARY L. TAYLOR, Plaintiff in Error, *v.* W. B. THOMPSON, Defendant in Error.

### November 22, 1881.

A husband and wife conveyed the wife's land, without consideration, to their confidential agent, who at the husband's request, conveyed the same for value, to the defendant, who knew the former deed was without consideration. After the husband's death, the wife brought this action to set aside the latter deed. *Held*, that, from the facts in evidence, the inference was fair that the wife, by her conveyance to her agent intended to authorize him to convey to such persons and on such terms as were satisfactory to him and to the husband, and that the defendant having acted in good faith, the bill was properly dismissed on hearing.

ERROR to the St. Louis Circuit Court, BOYLE, J.
*Affirmed*.

M. F. TAYLOR, for the plaintiff in error: Where the legal estate in lands is conveyed to a stranger without consideration there arises a trust for the owner. — *Grove* v. *Falsome*, 16 Mo. 543; Story's Eq. 383, 395, 1014; Hill on Trustees, 170; Hill on Trusts, 92. One who takes property with trust, with notice of the trust charge, is bound by the trust. — *McLaurine* v. *Monroe*, 30 Mo. 462; *Truesdale* v. *Callaway*, 6 Mo. 605; *Thompson* v. *Reuve*, 12 Mo. 157;

*Paul* v. *Chouteau*, 14 Mo. 580. And this is so whether the trust arises upon the face of the instrument or by implication of law. — *Martin* v. *Bank*, 31 Ala. 115 ; *Moliney* v. *Kernan*, 2 Dr. & War. 31 ; *Butcher* v. *Stapleton*, 1 Vern. 363. An equitable ownership will prevail, not only against a purchaser with actual notice, but also against one who buys under such circumstances as would have afforded him notice had he used proper care in making the purchase. — *Vaughn* v. *Tracy*, 22 Mo. 418 ; *Foster* v. *Brashears*, 55 Mo. 22 ; *Fellows* v. *Wise*, 55 Mo. 413 ; *Muldrow* v. *Robinson*, 58 Mo. 350. When one purchases land with notice of trust he takes no better title than his grantor. — *Robbins* v. *Mosely*, 64 Mo. 507. He who takes with notice of an equity takes subject to that equity. — *Major* v. *Buckley*, 51 Mo. 231.

GLOVER & SHEPLEY, for the defendant in error.

BAKEWELL, J., delivered the opinion of the court.

The bill in this case was filed on March 18, 1880. The allegations are that plaintiff was, on October 31, 1876, the owner in fee of certain lots in the city of St. Louis ; that on the date last named, she joined with her husband, William C. Taylor, who is since dead, in conveying the property to Marcus A. Wolff, without other or further consideration than his undertaking to hold the property for her use ; and the said Wolff took the property with the understanding and agreement that he would hold the same as trustee for plaintiff; and that Wolff, without authority from plaintiff, and in violation of the terms and agreement under which he received the property, conveyed it, on January 15, 1879, to defendant ; that defendant never paid anything for the property to Wolff, or to plaintiff; that defendant took the property with full notice of plaintiff's claim ; that plaintiff did not, and does not now, desire that defendant should hold the property ; that the property is very valuable, and that defendant has sold some of the lots without authority

from plaintiff, and appropriated the proceeds to his own use. Plaintiff states that she does not know which of the lots have been sold by defendant. The prayer is, that a referee be appointed to ascertain what lots have been sold by defendant, and that plaintiff have judgment for their value and interest, less a reasonable compensation to defendant, and for a reconveyance to the plaintiff of the unsold property.

The answer is a general denial. On hearing, the bill was dismissed.

The documentary evidence showed, that the premises in question were conveyed to plaintiff in fee, in 1874. Deeds for the property in question, from plaintiff and her husband to Wolff, in 1876, and from Wolff to defendant, were introduced.

Wolff testified, that the deed from Mr. and Mrs. Taylor, was executed and recorded during his absence in New York; that he paid nothing for the property, and knew nothing about the conveyance, till told of it, on his return, by W. C. Taylor. Witness had been agent for Mrs. Taylor, and had sold all the other lots in the subdivision. Mr. Taylor asked witness to advance money to him upon the property, and told witness that the lots had been conveyed to him, so that Taylor could sell them again whenever he wanted to. Witness told Taylor that he would not advance a dollar on the lots; that they were put in his name without his authority or consent. Taylor then said that he could get what he wanted from somebody else, if Wolff would convey to any person he might designate. Thompson then came to Wolff about making a deed to him. Thompson asked Wolff if it was all right if he bought the property from Taylor, and if Wolff had any claims on it. Wolff replied that he had no claims, and was ready to make a deed to any person designated by Mr. Taylor. Wolff told Thompson that he came home, and found the title in his name, which he would not have permitted had he

been at home; and explained that he had nothing to do with the property, but would convey it according to Mr. Taylor's instructions. Thompson said that Mr. Taylor wanted some money from him, and proposed to sell the lots to him. Wolff told Thompson that he had no claims on the property whatever; that he had made his final settlement with Mr. Taylor, and would convey the lots whenever he was instructed to do so. In one part of his testimony, the witness says, in answer to the question, whether Thompson asked him as to what circumstance caused the conveyance to him: " I don't think there was any circumstance mentioned." But further on in his testimony, he says: " I think he both asked me the circumstances under which I became the owner of the property, and I detailed them to him." Thompson talked to the witness about the matter on several occasions, before he executed the deed, and, in the intervals, had conversations about the matter with Taylor. The witness was intimate with Mr. and Mrs. Taylor. Some of the property conveyed by the Taylors to Wolff, was conveyed by him, at Mr. Taylor's request, to one Frank, some time before the deed to Thompson. The lots in the subdivision were purchased at some sale of the subdivision, at from $3 to $15 a foot; but the witness does not know what lots these were, and it does not appear what sale he is speaking of.

Mrs. Taylor testified, that she made the conveyance to Wolff for her own use and benefit. She says: "A few days after the sale, I went to Mr. Wolff's office; he was then in New York, but I saw Mr. Bailey. I went there for the purpose of asking Mr. Bailey how many lots were left. He told me there were forty-eight, and that they amounted to about $8,000, at the rate lots were selling at the sale. I then asked Mr. Bailey to go with me to Mr. Taylor's room. He went there with me; and Mr. Taylor said they should be made over to Mr. Wolff. He agreed with me to make them over to Mr. Wolff for my use and benefit. I know

nothing at all about the sale; never heard anything about it, until the Sunday night before the sale took place. The sale took place on Monday morning. I sent my son down as soon as I heard of it, to stop the sale; and he did so. I have never received any benefit from it. I never sanctioned it. I never knew anything at all about it; and never received one cent of all the money the lots were sold for. I did not know the lots were going to be sold to Mr. Thompson. I never knew a word about it. When I left Mr. Taylor, I went to the country, thirteen miles; and I saw him no more for several weeks, and after the sale had taken place. I was so confident they were in my possession that I never inquired. I never gave anyone authority to sell the lots. Mr. Wolff did not pay me a cent. It was arranged between Mr. Taylor and him. I knew nothing about the arrangements Mr. Bailey had made until after he had made them. I told him to make that arrangement, to make the lots over to Mr. Wolff, so that, in case I wanted to sell the lots, I would get the money, and Mr. Wolff could make the deed. That was my object in making that to Mr. Wolff the way I did."

Objections to most of the testimony of this witness were sustained. The court admitted the statements that she received no money from Wolff; that she said nothing to Wolff, and had given no authority; and ruled out the rest of this testimony.

It was admitted that children born of the marriage of Mr. and Mrs. Taylor are living.

There was no other testimony in the case. No testimony was introduced by defendant. The consideration named in the deed to Wolff is $3,000; and that named in the deed to Thompson is $4,000. It does not appear at what time between the conveyance to Thompson and the filing of this bill, William C. Taylor died. There is nothing in the testimony from which it can be determined what the market value of the property conveyed to Thompson was, at the

date of the deed to him, or to warrant any inference that the price paid by him was inadequate.

There can be no question that, if Thompson purchased this property without notice, or anything to put him on inquiry, his title, as against plaintiff, is unimpeachable.

Appellant contends that the legal estate in these lands having been conveyed to a stranger without any valuable consideration moving from the grantee, there arose from this fact a trust for the owner; that Wolff, therefore, held this property in trust for William C. Taylor for life, and, after his death, in trust for Mrs. Taylor; and that Thompson is shown to have had knowledge of facts to charge him with notice that the beneficial interest was not in Wolff, and of Mrs. Taylor's equity.

Thompson would appear to have had knowledge of the following facts: That the fee of the property, at the date of the conveyance to Wolff, was in the wife; that Wolff was the confidential agent of husband and wife, in regard to the property, and, as such agent, had made sales for them from the tract of which these lots were the unsold remainder; that the husband was to be seen in town, and the wife thirteen miles in the country; that, for convenience of sale, husband and wife had put the title to these unsold lots in Wolff. Wolff told Thompson that he was to convey according to the directions of the husband. Why was Thompson bound to make inquiry of Mrs. Taylor as to whether she approved of the sale that Wolff was about to make? How could Mrs. Taylor have more plainly said to the world, that, so far as her interest was concerned, she authorized Wolff to sell at discretion, than by executing and placing on record a deed for the property to Wolff, purporting to be for a valuable consideration? What greater security could Thompson expect by going to the country, and intruding upon the privacy of Mrs. Taylor for the purpose of asking her whether Wolff was really authorized by her to make a good title to any part of the property, to

such person and on such terms as might seem good to him? If Mrs. Taylor had then told Thompson that Wolff had full authority from her to sell, she would have said no more than she had already said by her acts ; and we might then be told that this statement could not be binding ; that married women are not estopped, unless their acts are intentional and fraudulent, and not then, where the fraud is mixed with contract.

Thompson's inquiries seem to have been directed to any possible claim that Wolff might have, in case the purchase-money was paid to Taylor. Nothing appears calculated to arouse a suspicion that Wolff did not have the fullest power to act both for Taylor and his wife in the matter. Nothing appears to show that Thompson did not act in good faith. Unless, then, we are to hold that no assurances of Taylor, Mrs. Taylor, and Wolff would have made it safe to take a deed for this property from Wolff, we see no reason to hold that the deed to Wolff did not pass the beneficial interest as well as the legal title to this property ; and we think that it is a fair inference, from the evidence, that it was the intention of all the parties that such should be the effect of any deed to this property made by Wolff.

The property seems to have been conveyed to Wolff as a mere conduit to make conveyances as the lots might be sold. The fair inference from the facts in evidence, and from those known to Thompson, seems to be, that Mrs. Taylor, by her conveyance to Wolff, intended to authorize him to convey to such persons, and on such terms, as should seem good to him and her husband. Wolff had been selling lots from the tract before, and it does not appear that he had any instructions from Mrs. Taylor not to sell without consulting her. He had sold a portion of the tract to Frank, and it does not appear that Mrs. Taylor objected when the fact became known.

We do not think that plaintiff made out a case for equitable relief ; and we think that the circuit court committed

no error in dismissing the bill. The judgment will therefore be affirmed. Judge LEWIS is absent; Judge THOMPSON concurs.